This is our second case of the morning, 414-0942, Toria Jones v. Department of Healthcare and Family Services. For the appellee, and I'm going to say the appellee first, Mr. Draper, and then for the appellant, B. Scott? Yes, B. Scott is fine. B. Scott? No, what is it actually? B.S. Jock. B.S. Jock? B.S. Jock, yeah. Okay, all right, thank you. You may proceed. May it please the Court, my name is Frank B.S. Jock and I represent the defendant, the Department of Healthcare and Family Services. This appeal arises from the Department's discharge of Toria Jones and the Commission's decision approving that discharge. While the Circuit Court affirmed the Commission's finding as to misconduct but reversed its finding as to cause for discharge, on appeal this Court reviews the Commission's decision rather than that of the Circuit Court. And between the appeal and the cross-appeal, the Commission's findings as to both misconduct and cause for discharge are at issue here today. In this case, the Commission found that Jones violated rules about conflicts of interest, maintaining records, and supervisory approval when she approved benefit requests while working as a caseworker at the Department of Human Services on five separate occasions during a seven-month period. In addition, the Commission found that Jones improperly received benefits from a link card from somebody else's link card that she was not entitled to. Based on these multiple violations, the Commission found that Jones had engaged in a pattern of misconduct rather than just an isolated mistake or error in judgment, and that those violations provided a cause for discharge. In the cross-appeal, Jones argues that the Commission's findings of misconduct are against the manifest way to the evidence. As to the findings of misconduct based on the approval of the application of benefits to a number of individuals, all those findings were based on evidence that was presented at the hearing. Specifically, Jones admitted to approving all of those benefits at those times. In addition, she admits either through her testimony or through stipulation that she did not make case records as to a number of those approvals. In addition, there was evidence showing a conflict of interest insofar as Jones had a relationship with both Charlene Poindexter and Betty Bridges, insofar that she had known them well enough to name them both as emergency contacts on an emergency contact form, and three of the individuals who she approved benefits for, Keewon Poindexter, Antoinette Burtz, and Jacqueline Bridges, were the daughters of those two friends of hers. Although Jones attempted to challenge the closeness of her relationship with those individuals at the hearing, the ALJ found that she was not credible on that issue because her testimony was inconsistent with her prior naming of Charlene Poindexter and Betty Bridges as emergency contacts. Now, rather than challenge any of the evidentiary bases for the ALJ's findings, Jones argues on appeal that there was some sort of a mismatch between the hearing and the charges in the Statement of Discipline. But in doing so, Jones overlooks the fact that she was charged with violating the rules on conflicts of interest, supervisory approval, and case records in charges four through six of the Statement of Discipline. Therefore, Jones was charged with violating every rule that she was found to have broken. And the ALJ's decision to organize his conclusions of law based on the individuals listed in charge three rather than the rules cited in charges four through six has no bearing on the factual findings of what occurred based on the evidence that was presented at the hearing. Therefore, the Commission's findings as to those violations are not against the manifest way of the evidence. In addition, the Commission's findings that Jones improperly received benefits from somebody else's link card was supported by evidence that was presented at the hearing. Specifically, it was supported by evidence showing that a receipt for two cookie cakes purchased with Adrian Burtz's link card was found at the DHS office on the exact day that Jones brought those exact items to a DHS office party. In addition, as stated earlier, there was evidence that Jones had a relationship with Charlene Poindexter and that Adrian Burtz was Charlene Poindexter's son and that Jones had previously had a relationship with Adrian Burtz as shown by her petition for an order of protection. In addition, there was testimony that Jones had admitted during the investigation that she had received link cards from Charlene Poindexter in the past. Despite all this evidence, Jones argues that the Commission's finding was against the manifest way of the evidence, but it was the Commission's responsibility as the finder of fact to weigh the evidence, to make reasonable inferences therefrom, and its decision should be affirmed so long as there is evidence to support it as there is in this case. Counsel, this may be a little bit unrelated, but I found it very confusing the way the allegations were written up and is that still true? Is that still the practice? I mean, has that improved? Because I felt for this judge in this administrative hearing, I don't see how he kept it all straight, quite frankly. Right. I don't know about the practice going forward. I mean, Terri Schago testified that she thought this was a situation that was more complicated than she usually dealt with when setting out these charges. But to the extent that there was confusion regarding what was alleged and which charge and so forth and so on, the ALJ addressed it as a matter of fact. The ALJ addressed that situation during the hearing and clarified it. The ALJ did a very good job because I think it was a challenge. Yes. And in addition to clarifying, he made sure that Jones was following along so everybody was on the same page as to the way that the charges were set out and the relationship between them and how they were being interpreted. And in addition to the extent that Jones challenges the finding as to the improper benefits from the link card on the basis that her witnesses were more credible than the department's witnesses, that comes down to a credibility determination, which this court will not reverse because that's left for the commission. And on that issue, anyway, the ALJ specifically questioned each of the two investigators about their independent memory regarding what Jones had said during the previous interview. Now, based on those findings of misconduct, the commission then found that those that they provided cause for discharge. Specifically in doing so, the ALJ found that because there were multiple instances of misconduct, that this wasn't a situation where someone was being charged. That someone merely made a mistake or had an isolated error in judgment, but that this showed a willing disregard of the rules and that taken together, they provided a cause for discharge. Now, what about the fact that it appears that, generally speaking, it was found that the amounts she approved were all appropriate, so it's not as if she gave someone something they didn't have coming to them, so to speak. I mean, how does that weigh into whether or not discharge was appropriate, and how should we look at that? Well, I think it doesn't really relate because the ALJ and the commission based their discharge decision on the charges that were approved. I mean, in that same decision where the ALJ found that discharge was appropriate, the ALJ also found that these other matters had not been approved, but that despite that fact, the things that were approved were serious enough to be approved. And that was a reasonable decision based, in part, taking into account the types of rules that she wrote. Rules involving conflicts of interest, recording transactions, accepting gifts, these are the types of rules that are put in place to ensure that benefits reach the intended beneficiaries. These are public funds and there needs to be transparency in order so that either a member of the public looking at this or the federal government provides some of these funds can look at this and ensure that the benefits reach the intended beneficiaries. And to ensure that these benefits and these programs are not being abused. And because those violations involve issues... Well, were the programs abused under these facts? Well, under these facts, there were...well, the only, I guess, proof of a violation that went to an actual abuse of benefits would be the improper receipt of benefits from somebody else's link card. So the cookie cakes? Right. But the rest of the violations are very serious because they involve conflicts of interest and they involve approving benefits for her friends' children without them recording those benefits. Even if the department couldn't prove in this hearing that those benefits were, you know, should not have been granted in the first place, it's necessary to have this level of oversight through, you know, ensuring that conflicts of interest don't arise. Not just so that the funds go to the correct recipients, but also for the public at large to have, you know, trust in the system as being properly administered by its employees. And these violations deal with overarching issues of trustworthiness and reliability, which are material... Let's assume for the moment that we agree with you and probably anybody would in terms of we want to have faith in the system. Right. But if no clear abuse for most of the activities was shown, and I don't mean to suggest that a cookie cake or a soda somehow gets a pass, but let's just say in this instance the fiscal transgression of the act, that's a given, that that happens. And that the conviction was minor as compared to the process needs to be strict and perfect. Is the trial court permitted to take into account that while there was a pattern, it was a pattern that showed sloppiness or bad judgment in that moment, but sort of no harm, no foul to the public fisc, actually. And that in her new job she wouldn't have the opportunity to do that, wouldn't be called upon to make those kinds of judgments, and there'd also been the passage of time. Can the trial court properly take that into account in saying, yes, department, you've proved, but gosh, termination is too severe. Is it permissible for the trial court to do that? I think the answer, I suppose the answer is yes. The answer is yes, but with the qualification that these discharge decisions by the commission receive considerable deference and they are reviewed under a standard that they will only be reversed if they are arbitrary, unreasonable, or unrelated to the terms of service. And so while... So this isn't just arbitrary and it's not unrelated, so it's really more a matter of, the other side would be saying, this is unreasonable given the context and given her present job situation. Right. Jones argues that it's unreasonable because she characterizes the violations as minor. But neither the commission nor the department was required to have that same opinion of the severity of these violations. And the ALJ, in finding that discharge was appropriate, did consider a number of factors that may have favored a lesser penalty. The ALJ found that perhaps each individual violation may not have been sufficient to warrant discharge on its own, but that when taken as a whole, the misconduct was severe enough to warrant discharge. So that, I think, specifically goes to sort of the arbitrariness or unreasonable tax is that, you know, the ALJ explained the reasons. This is not a situation where it's like a one sentence decision or anything like that. The ALJ took these different factors into account. And if the circuit court or even this court might take those same factors and find that, well, maybe it would be more appropriate to have a 90-day suspension or some other type of lesser penalty. Unless it's arbitrary or unreasonable, the commission's decision should stand. And in part because these sort of qualitative decisions about what's severe and what's minor, what's important to service, those are best understood by the department and agency itself and the commission. They're in that because they know their jobs. They know what they do on a day-to-day basis. And so what they value in terms of an employee, they're in the best position to make that decision. And I think that's why you have such a deferential standard to these types of decisions. And in addition, the other point that Jones raises as to why she thinks that this penalty is too severe is she argues that, well, if DHS didn't discharge her once they found out about these, then that shows that DHS didn't think it was severe. But the fact that DHS waited until the investigation into these allegations was completed to find out if these allegations were substantiated by evidence should not be held against the department. It's just merely a reasonable decision to wait until an investigation is complete to see what the evidence is before making a discharge decision. And so for all those reasons, the commission's discharge decision was not arbitrary or unreasonable. It was related to the requirements of service, and therefore this court should affirm the commission's finding as to discharge. Did Jones know that she was under investigation when she made application to the department? When she left human services and made application to the department? Yeah, I mean, the earliest that there was evidence in the record that she knew was she was interviewed by the investigators in May 2010. So presumably at that point she, at least by that point, she would have known that she was under investigation. And I think she moved on January 1, 2012. So the answer to my question is yes? Yes, unless I'm misremembering January 1, 2012, but I don't think I am. Is there any issue about whether she should have divulged that to the Department of Health Care and Family Services? None of that came up, and I think in part is because there are confidentiality rules with these investigations. There was evidence that nobody was really supposed to talk about this while it was going on. So likewise in the two departments don't exchange this sort of information? Correct. The department was unaware of the investigation at the time that she began with the Department of Health Care and Family Services. They didn't learn about this until after the investigation had been complete and the OEIG had issued its report. So I'm not sure if Jones was interviewed by the investigator, but that wouldn't necessarily let her know that she was being investigated. I mean it's certainly strong inference, but not necessarily. Didn't she indicate that the reason she left was because she felt that her boss was harassing her and basically requiring her to do things or watching her more closely than anyone else? Yes, I mean the evidence shows that there is certainly a strange relationship between Jones and Strickland. And Strickland did testify at the hearing, but in reaching his findings, the ALJ really didn't rely on Strickland's testimony at all. He found that she was overzealous, and when he made his findings as to misconduct and everything, he really relied on other evidence. Jones' own admissions, the testimony of Jones, excuse me, Spears and Prior Wallace, who were the investigators, the physical evidence of the receipts, and the petition for participation. Those were the matters that she really relied on. And lastly, I just briefly want to touch on the issue of laches, which was raised in Jones' cross-appeal. Jones argues that the Commission should have dismissed the charges against her on the basis of laches. However, Jones never raised that defense before the Commission. She never asked the Commission to dismiss those charges on that basis, and therefore she's forfeited that claim. And even if forfeiture didn't apply, laches is reviewed under an abuse of discretion standard. And so the Commission cannot abuse this discretion by failing to dismiss charges on a basis that was never brought before it. And even if Jones had raised a laches defense before the Commission, she would not have been able to meet its elements. She would not have been able to show a lack of diligence on behalf of the Department by bringing its charges after the investigation had completed. She would not have been able to show prejudice as a result of when the charges were brought. And in any event, there's a strong presumption against applying laches against two government entities. And Jones has not identified any compelling or extraordinary circumstances in this case to justify the application of that doctrine here. So unless your honors have any further questions, I'll stop now. Thank you. We'll go from the Honorable Mr. Draper. Thank you, and may it please the Court and Counsel. My name is Carl Draper, and I represent the original plaintiff in this court action toward Jones in this case. What you heard is the opening from counsel that this case is a matter of important issues concerning fraud, conflicts of interest, improper gifts, corruption, lack of transparency, the failure to follow specific rules of the Department. And the problem with that characterization is that it's not supported by the record at all. In fact, it's not supported by the Administrative Law Judge's decision that really became the decision of the Commission in this case. When I presented the Court the statement of facts, I thought that the best way to present them, given the standard for manifest weight of the evidence, was simply to accept as true the actual factual findings and summary of the testimony given by the Administrative Law Judge. I didn't quibble over any of the niceties and interpretation of that and gave all the deference to the decision that this Court gives to the decision. But when we look at those findings of fact, they conflict with the conclusion that these charges were proven and that discharge is appropriate. Now, the record is replete. The decision is full of references from the Administrative Law Judge about his concerns of discharge from a different agency two years after Torah Jones transferred from an earlier agency where she worked for two years even after Gail Strickland started investigating her. He was very concerned about the passage of time and the passage of time he noted the numerous lapses of memory of the key witnesses. I disagree with counsel about Gail Strickland's testimony wasn't relied on. Gail Strickland was the witness. The Administrative Law Judge said she was overzealous in a mission to prove charges against Torah Jones. But counsel, what about the stipulation? I mean, your client admitted those transactions in the stipulation. She indeed, for the charges that were found, processed and approved applications. And so the question is whether or not the charges that were written were proven and if they were, what was proven? Because what was not proven was that she ever approved benefits for anyone not entitled to them. When you especially look at... She never did that and she never, they didn't prove that she gave improper amounts to those people. Not only not improper amounts but not to improper people because charges 4, 5 and 6. But what about the fact that she admitted that she didn't make the necessary case notes and what about the cookie case? Let me take them one at a time. The case notes, that's charge 5, not proven. There's nothing in charge 3 and its subparts that says that she didn't give the proper documentation. There's nothing in charge 1 that says that. Are you reading that the way that the Administrative Law Judge organized it? Or because I think it's very confusing how they made the allegations. So how are you viewing that? Let me address that. I cited in our brief the personnel rule that mandates that charges be drafted with a certain amount of specificity. Going outside the record because I do so many of these. No, these charges aren't typical of what's being done today. Just to provide all of us with some relief that there are much more specific time, date and place. But let's deal only with this record of course. In dealing with it, the ALJ specifically found charges 4, 5 and 6 weren't proven. He didn't adopt them as part of his analysis of charge 3A for example. Charge 1 is the one that you're focusing on most. Because charge 1 doesn't give the detail that I think the rules require. But it's the one that says you processed applications where you had a conflict of interest and should not have. It's the broad one. But charge 1 doesn't say you failed to document with case notes. Charge 1 doesn't say you didn't get supervisor approval. Why is that not the same thing? You didn't get approval from the supervisor. Is that the same thing? No, because the supervisor's approval wasn't required for every kind of transaction, only for some. And the department's rules were placed into the record concerning that. I thought you have to document it because in doing so, that gives the supervisor a chance to take a look at it and make a determination whether a person should get the benefits or not. There were files with documentation. Case notes are a very specific element of that. And that's the one that was not proven in charge 6. And it's the commission's own finding that DHS, DFS did not appeal. Everyone accepted the commission's decision about what was not proven. And the rules do require that the charges have specificity. And so this should have been challenged. A difficulty with a pro se litigant, this should have been challenged if the rules weren't being followed in drafting the charges leading to all of this confusion. But let's give the very benefit of the doubt on this. Charge 1 says you approve for improper people. That's perhaps the most dangerous and difficult charge for Tora Jones. Charge 3, A, B, C, D, and G deal with amounts. And those weren't proven. And those charges don't say failed to document. And those charges don't themselves say conflict of interest. That's charge 1. Those charges don't say failure to have case notes or failure to get supervisor approval. And in fact, when it came to one of the travel expenses and insurance, a person had Missouri insurance instead of Illinois insurance, the administrative law judge specifically found that the department was completely wrong. Gail Strickland was completely wrong with how she analyzed that. So this case is not about a pattern of fraud. This case really deals with a small, isolated number of transactions out of the many, many, many transactions she would have done in a very limited period of time while she was employed at the department. She worked there for several years, but let's just look at what happened. Once Gail Strickland started looking into this in 2008, she kept working through the very end of 2010. No other problems. No other issues. No restriction. No extra supervision. Nothing was done about that. And let me come to that at the end. But those charges weren't proved and this confusion is caused by the department who has the obligation to do it. Now let's talk about Lachey's. Lachey's was part of the case from the get-go. The administrative law judge focused on it immediately. It wasn't hidden from the commission such that they were deprived of an opportunity to decide it. In fact, it was raised by the administrative law judge. If the administrative law judge already raised it, Tori Jones didn't have to go through some technical requirement to file a written motion saying you must dismiss this case based on Lachey's. It was inherent in the case and it's built into the decision. And the department had every opportunity to respond to the decision and to those provisions that would have dealt with that. So let's look at how this applies with the one leading case that we cited. The Mank case. Mank dealt with a delay of this kind. It was 39 to 44 months depending on the charge. Whereas this case involves a 48 month delay. And of course we do have to prove more than delay. We have to prove some kind of actual prejudice. Well, the administrative law judge found Gail Strickland was extremely overzealous. Not just zealous, his word was overzealous. And then we counted for the circuit court and for this court the number of times in the record people said they don't remember. There were over 60 instances of people not remembering. Let me ask you this because there's a difference between saying this case has to be dismissed because of the delay and talking about it in the hearing. There's a difference between putting them on notice that we want this entire case dismissed based on your delay than I don't remember witnesses saying they don't remember because of the delay. I don't see how the department was put on notice that this defense was being asserted. Well, I think it was being asserted by the administrative law judge because the commission has limited jurisdiction and it doesn't have, for example, extensive... So the judge asserts a defense? The administrative law judge raised the issue because the commission is bound to follow the personnel code that requires a merit-based decision including progressive discipline and other steps. So it's inherent in what they do to examine that and it was an issue raised during the hearing that people weren't remembering and that these charges went that far back. During the hearing itself the department had every opportunity to try and explain and they tried and they used this excuse. The OEIG was investigating and their investigations are confidential. Well, the problem with that is this. The OEIG's jurisdiction is confined to the Ethics Act. In fact, now there's a statutory provision that expressly says these jurisdictions are exclusive of each other, different. What the OEIG can investigate can lead to a recommendation, can lead to a charge before the Illinois Ethics Commission and that's the extent of it. No one testified that the department was asked to not pursue discipline. The confidentiality provisions they talk about talk about a statutory confidentiality about identifying who called the OEIG's office and filed the complaint. So what you're telling us now... Nothing conflicts with their duty to act. No one testified regarding that, so it's not a record in this matter. It wasn't raised, not considered, is that what you're saying? Just Gail Strickland and I think one of the other supervisors testified we didn't do anything because the OEIG was investigating. Not because they were told to and certainly they couldn't point to a statutory basis for that because it doesn't exist, it never has. So do you think that the administrative law judge understood that there was a request to just dismiss the entire proceeding based on the delay? I think the administrative law judge viewed it as the responsibility of the commission to consider whether or not that delay defeated there being cause for discharge, that that's a mandatory part of what their jurisdiction includes. This went further than just the 48 months and just 60 times people didn't remember of whom, by the way, 25 were Gail Strickland and 17 were from the OEIG investigator himself who was principally relied on, who couldn't even remember whose link card supposedly was used to buy the cookie cakes that are the initial charge and became the impetus for this investigation. So Mank said if there's an analysis based on recollection, laches becomes an important issue and the commission viewed it as important but reached the wrong conclusion and I believe abused its discretion as to that. So it wasn't just inaction, but it was deliberately allowing Jones to continue working where there apparently were never any more problems, allowing her to transfer, and by the way, there is no restriction on communicating disciplinary information from one agency to another. In fact, that's why all of the agencies do personnel through the Department of Central Management Services. There's a central repository of that kind of information. And certainly the concerns about this never arose for the two years after. Justice White, you had asked about was Jones even aware of the interview. Well, she was interviewed in 2010 and she was allowed to work for two years. She was never on notice that she should have been gathering documentation so that she could defend herself against the kind of efforts from Gail Strickland. As to the manifest weight of the evidence, obviously if there's disputed evidence, this court's going to give the appropriate deference under that standard. Charge 1 is extremely vague about who and self-contradictory, but when we look especially at charges 3 through 3, A through G, the ones that were found proven, under the rules these violations have to be specific and they have to be treated as distinct from the generalized one in Charge 1. And when you do that, those charges A, B, C, D, E, and G weren't proven, the Commission found so. Those charges aren't specific in including any documentation or approval process. So we're at the conflict in Charge 1, which is much more heavily in the Department's favor. I'm sorry, Your Honor. No, that's okay. I'm looking at the Administrative Law Judge's decision and he indicates that Charges 1 and 2 were partially proven. Charges 1, 3, and 3D and 3A, 3B, 3C, and 3G. And in paragraph 18, he specifically talks about the benefits to, let me see the name here, Betty Bridges' daughter and that there was not a case note made. But then earlier when I asked you about the case note allegation, you said something about Charge 5 maybe and that that had not been proven, but do you agree that the Administrative Law Judge did find that was proven with respect to Betty Bridges' daughter? He found that factually the case note wasn't there. No, he says Jones did not make a case note regarding the benefits she authorized for her aunt's daughter. This conduct amounts to a violation and then cites the section of the manual. But however, the petitioner did not prove the transaction amount was in violation. And I'm trying to figure out which charge that is. I'm on page 27. I'm following you there. But at the same time, if that's relating to Charge 3D, Charge 3D says Ms. Jones improperly authorized $241 of SNAP supplemental payments on or about $241. It's not a charge that charges documentation. Charge 5 does, and we have the express finding of the Commission unchallenged in the Circuit Court or here, that that charge wasn't proven. This charge relates to approving that amount of money for that recipient. And that's how the Department should be held. They need to file the charges based on what they intended to prove. They did file a charge saying improper documentation, and they lost that one. They thought they were trying to prove that an improper amount was approved, and they didn't put on evidence to show that the amount was improper. So they really focused their case on Charge 1, that she was in a close enough relationship with some of these people. And I'll let my written brief deal with that. We're talking about people that she worked with at Kohl's. Adrian Burts was a man she had a relationship with. That's the closest connection. Otherwise, she didn't have a close family. So I see where Charge 1 is the most difficult one for us to overcome. But the decision for discharge, if I can just conclude then, in fact does meet the standard that it's arbitrary because it is unrelated. These incidents are not only each individually small, collectively they're small. And it can't be considered that these are so monumental that without prior discipline, without the progressive discipline that's required by the Personnel Code, that you would fire someone when Gail Strickland let her continue working for a year and a half after undertaking this investigation without testifying that she ever restricted or imposed any other supervision on her or took any steps towards discipline. She allowed Tora Jones to assume that this was not significant. Her interview in 2010 leads to a two-year delay. She doesn't think anything of it other than, thank God I'm away from that agency and now I'm working for a new one. And at the new one she's engaged in no misconduct, has no access to these kinds of improper approvals and her job's unrelated to that. So with no amounts of money being awarded improperly, we've got some bad judgment is the best that we can characterize and support charge one, but we can't support the charge three subparts at all. And we're talking about even a lot of conflicting and questionable evidence on the part of the Department's witnesses to even prove that Adrian Burt's card was used by with the ALJ saying, the evidence induced at hearing revealed an intelligent individual willing to manipulate the system in violation of the rules to benefit herself and her friends. These are substantial shortcomings despite the fact that there's been no previous discipline and it's a good cause for distrust. He said all of the legally correct words for this, but it's not borne out even by his own findings because at most there's conflicting testimony, but there is testimony that she supposedly admitted getting sodas for her children from Charlene Poindexter at the grocery store line. She denied the cookie cake even if you believe, well we'll look at the circumstantial evidence, it's enough to reach preponderance because how would it get there? Even if you do that, that's what we're talking about. Totally inconsistent with saying this is substantial by the ALJ. But what about the conflicts? I mean that's the whole purpose. If you have someone coming in seeking benefits and you have them listed on your emergency contact form or you're dating their son or he's living with you and he's coming in for benefits, we shouldn't have that. That goes to proving charge one. And then the question is, is that enough out of 17 charges with the most serious ones being expressly found not proven and with the amounts not being wrong? That it simply cannot be that she could work for this long, be allowed to transfer and that they claim that these are so insurmountable for what are otherwise isolated incidents out of a longer span of time. I'm sorry for such a long answer, but that's the answer. Thank you. You've been very helpful. Thank you. Rebuttal. There's a few brief points on rebuttal. The first is the briefest in its response to a question I asked earlier about when Jones moved from DHS to DHFS and I said it was January 2012. I checked. I was wrong. It was January 2010. So it was five months prior to her first, to the first time she was interviewed by the investigators. Jones talks a lot about or challenges the way in which the charges were written and then the way in which the ALJ organized his conclusions of law. But Jones, every rule that Jones was found to have broken, she was charged with violating in Rules 4, 5, and 6. Jones had notice of those charges through the Statement of Discipline, notice of the allegations that she violated those rules and, most importantly perhaps, during the hearing, the ALJ specifically addressed this issue with Terry Shago, who was testifying and who had written the Statement of Discipline and went through and clarified that the rules that are alleged to have been violated in Charges 4, 5, and 6 apply to the people who were listed in Charge 3. And the ALJ checked to make sure that Jones was following that and understood what was going on. And so when the ALJ chose in his conclusions of law to organize these findings by the individuals in Charge 3 rather than the rules in Charges 4 through 6, he merely made a stylistic decision, an organizational decision, because he thought it would be easiest to present his findings in that matter. It doesn't change what factually Jones was found to have done and what rules she was found to have violated. And lastly, with regard to laches, Jones argues that the ALJ essentially raised this issue on his own because the ALJ addressed the delay in his decision. But the ALJ addressed the delay, not the delay, but essentially the amount of time that elapsed in the context of the severity of the disciplinary discharge of putting what had happened in the context of when she had been there. And I guess lastly, Jones argues that DHS or the Department could have, I guess, brought these charges sooner without violating any rules of confidentiality or that or anything like that. But just because they could have doesn't mean that there was anything wrong with waiting until the investigation was over to see if these allegations were substantiated by evidence. And to the extent she argues that she was prejudiced by witnesses having clouded memory or this, that, or the other, any prejudice would have accrued to the Department because it was the Department's burden to prove that she violated these rules. And Jones relies on those memory issues in arguing that the finding was against the manifest way of the evidence. So even if laches had been raised, there's no prejudice. Moreover, nothing to overcome the presumption against applying laches to a government entity. And so unless, Your Honor, I have any further questions, I ask that you. We do not. Thank you. I take the matter under advisement. I take the readiness of the next case.